[No. 27230.   Department Two.   December 1, 1938.]

HARRY GOODWIN, *Respondent and Cross-appellant,* v.
THE GEORGIAN HOTEL COMPANY, *Appellant.*[1]

[1]Reported in 84 P. (2d) 681.

*Wright & Wright,* for appellant.

*Stern, Orton & Stern* and *Kenneth S. Treadwell,* for respondent and cross-appellant.

STEINERT, C. J.—Suit was brought against an hotel company by one of its guests to recover the amount of a cash deposit left by him with the hotel for safekeeping. Trial by the court, aided by a jury which functioned merely in an advisory capacity, resulted in findings and conclusions upon which judgment for plaintiff was entered, but in an amount less than the original deposit. Both parties have appealed. Defendant hotel company, which took the main appeal, will hereinafter be referred to as appellant; plaintiff, who took a cross-appeal, will be referred to as respondent.

Appellant, a corporation, operated the Georgian Hotel Company in Seattle. The hotel office, located in the rear portion of the main lobby, was about eight feet long and three feet wide. The registration desk, or counter, which was eighteen inches in width, formed a partial partition between the office and the lobby, the space above the registration desk being open and unobstructed. A door at one side of the office furnished entrance to and from the lobby. Inside the office appellant kept an iron safe, which was used exclusively as a depository for the valuables of its guests. The safe had a heavy outer door, secured by a combination lock, and a lighter door inside, which locked with a key; the key, however, was usually left in the lock. The combination was known only to appellant's manager and its two day clerks. The safe was, for the most part, kept locked at night.

Printed notices stating the facts that a safe or vault was provided by appellant for the safekeeping of valuables, and that the liability of the hotel was limited by law, were posted in three places on the hotel premises, one in the elevator, another in the parlor, or writing room, and a third on the wall in the rear of the office at a point immediately behind the registration desk and about four and a half feet from its outer edge.

On or about November 2, 1936, respondent, who had been a guest of the hotel for several months, delivered to one of appellant's day clerks, for safekeeping, the sum of fifteen hundred dollars. The deposit was made and accepted according to the system which appellant had adopted and was regularly following. Under this system, the clerk would supply the guest with an envelope in which the valuables were to be placed. On the back of the envelope was attached a slip of paper forming two identification checks, both bearing the same serial number, but separated from each other by a perforated line. The upper check was intended to be signed by the guest and the clerk receiving the deposit and to remain upon the envelope until redelivery of the deposit to the guest; the lower check was intended to be detached at the time that the deposit was made and retained by the guest until he reclaimed the deposit, at which time both the proper clerk and the guest were to sign it. Upon redelivery of the envelope to the guest, the clerk would put the surrendered check upon a spindle in the office, where it would remain for a brief period, until removed and destroyed by the proprietor or manager of the hotel.

On January 17, 1937, respondent tendered his check and claimed his deposit. The envelope could not be found, however, and it is conceded that the money was not at that time, nor at any time since then, returned to respondent.

Up to this point, the facts are not in dispute.

Appellant, denying all liability, alleged in its answer and endeavored to prove at the trial that, during the latter part of November, 1936, respondent tendered his claim check and received the full contents of his envelope; that the surrendered check was then placed by the clerk on the spindle; and that thereafter respondent surreptitiously removed the check from the office and

later tendered it again with intent to defraud appellant. The check, which was produced at the trial by respondent, appears as an exhibit in the case and gives evidence of having been torn from a spindle; it does not, however, bear respondent's signature, as required by the system then in vogue.

Appellant further contended, by evidence and argument, that, under the applicable statute, its liability was, in any event, limited to one thousand dollars.

At the conclusion of the evidence, it was stipulated between the parties that the court should submit to the jury the single question whether respondent had ever received his money from appellant. In response to an interrogatory on the subject, the jury returned a negative answer. The court adopted the jury's special answer and made it a part of its own findings, from which the court concluded that appellant was liable, but that its liability was limited to one thousand dollars. After deducting the amount of an accrued hotel bill of $117.65 owing by respondent, which is conceded to be correct, the court entered judgment for respondent in the sum of $882.35.

Upon its appeal, appellant contends that the court should have absolved it of all liability and should have given it judgment against respondent for the amount of the accrued hotel bill. Upon his cross-appeal, respondent contends that he should have been given judgment for fifteen hundred dollars, the total amount of his deposit, less his accrued bill.

The decision of the various questions presented to us depends largely upon the construction to be given to the several provisions of Laws of 1933, chapter 114, p. 434, § 1, entitled, "An Act to protect hotel keepers, [etc.]," now appearing as Rem. Rev. Stat. (Sup.), § 6862 [P. C. § 2805], which reads as follows:

"Whenever the proprietor, keeper, owner, operator,

lessee, or manager of any hotel, lodging-house or inn shall provide a safe or vault for the safekeeping of any money, bank notes, jewelry, precious stones, ornaments, railroad mileage books or tickets, negotiable securities or other valuable papers, bullion, or other valuable property of small compass belonging to the guests, boarders or lodgers of such hotel, lodging-house or inn, and shall notify the guests, boarders or lodgers thereof by posting a notice in three or more public and conspicuous places in the office, elevators, public rooms, elevator lobbies, public corridors, halls or entrances, or in the public parlors of such hotel, lodging-house or inn, stating the fact that such safe or vault is provided in which such property may be deposited; and if such guests, boarders or lodgers shall neglect to deliver such property to the person in charge of such office, for deposit in the safe or vault, the proprietor, keeper, owner, operator, lessee or manager, whether individual, partnership or corporation, of such hotel, lodging-house or inn shall not be liable for any loss or destruction of any such property, or any damage thereto, sustained by such guests, boarders or lodgers, by negligence of such proprietor, keeper, owner, operator, lessee or manager, or his, her, their or its employees, or by fire, theft, burglary, or any other cause whatsoever; but no proprietor, keeper, owner, operator, lessee or manager of any hotel, lodging-house or inn, shall be obliged to receive property on deposit for safekeeping exceeding one thousand dollars in value; and if such guests, boarders or lodgers shall deliver such property to the person in charge of said office for deposit in such safe or vault, said proprietor, keeper, owner, operator, lessee, or manager, shall not be liable for the loss or destruction thereof, or damage thereto, sustained by such guests, boarders or lodgers in any such hotel, lodging-house, or inn, exceeding the sum of one thousand dollars, notwithstanding said property may be of greater value, unless by special arrangement in writing with such proprietor, keeper, owner, operator, lessee or manager; *Provided, however,* That in case of such deposit of such property, the proprietor, keeper, owner, operator,

lessee or manager of such hotel, lodging-house, or inn, shall in no event be liable for loss or destruction thereof, or damage thereto, unless caused by the theft or gross negligence of such proprietor, keeper, owner, operator, lessee, or manager, or his, her, their, or its agents, servants or employees."

It is settled law in this state that an innkeeper cannot exempt himself from his common law liability as an insurer of the property of his guest unless he complies strictly with the statute enacted for his protection. *Watt v. Kilbury,* 53 Wash. 446, 102 Pac. 403; *Gillett v. Waldorf Hotel Co.,* 136 Wash. 615, 241 Pac. 14; *Featherstone v. Dessert,* 173 Wash. 264, 22 P. (2d) 1050. See, also, Beale on Innkeepers and Hotels, §§ 413, 417.

The first question to be considered is presented by respondent's cross-appeal. That question is whether or not appellant proved a strict compliance with the statute.

Respondent impliedly concedes that the notices which were posted in the elevator and writing room or parlor, respectively, were sufficient, both as to place and content. He vigorously insists, however, that the notice placed on the wall of the office was not posted in a "public and conspicuous" place, as required by the statute.

Respondent's argument is that the office was not a "public place," because guests were not allowed therein, and that, in any event, the notice was not conspicuously displayed.

The office was not wholly separate and apart from the lobby, nor was its interior screened from public view. It was rather an area within, and part of, the main lobby, and devoted to particular purposes. By reason of the open space above the registration desk, it was as much exposed to public view as any other

part of the lobby. We are of the opinion that, under the facts, appellant's "office" was a public place within the meaning of the statute. It is to be observed, also, that the statute specifically designates the "office" as a place for posting.

Although the wall on which the notice was posted within the office was not in as close proximity to the public as were the other walls of the lobby, the question whether a notice thereon was readily discernible, legible and calculated to impart the necessary information to one standing at the registration desk was a question of fact properly submissible to the court. Had the notice been posted in a show case or behind a railing within one of the rooms designated in the statute, it certainly could not be said to have been insufficient merely because the guest could not get into the show case, or behind the railing, or as close to the posted notice as he otherwise might.

It is further urged, in this connection, that the notice was insufficient because it did not state where the safe was located or the purpose for which it was provided. The statute says that the notice shall state "the fact that such safe or vault is provided in which such property [money, etc.] may be deposited." The given notice bore the inscription that a safe or vault was provided in the hotel, in which valuables of the nature described in the statute might be deposited for safekeeping. That, we think, was sufficient.

Upon the evidence before us, we agree with the trial court that the notice was sufficient both as to posting and as to content.

The next question to be considered is presented upon appellant's appeal. That question is whether or not, upon the record, the statute is a complete bar to any recovery whatever by respondent. Appellant contends that the statute is a complete bar; respondent

contends that it is not. The issue between the parties may be expressed in this way: Appellant contends that, when compliance by the hotelkeeper with the terms of the statute has been established, the burden immediately shifts to the guest to show that the loss was caused by the theft or gross negligence of the hotelkeeper or his agents, and that, until such burden has been met, the statute affords complete protection to the hotelkeeper. Respondent, on the other hand, contends that, when loss by the guest has been established, the burden shifts to the hotelkeeper to show that the loss was not caused by the latter's theft or gross negligence, and that, unless that burden is met, the hotelkeeper is liable for the loss.

It is the rule in this state, as well as elsewhere generally, that, ordinarily, when a bailor proves that he deposited property with the bailee and that the bailee failed to return the property on demand, the burden is on the bailee to show that the loss is not due to his negligence. *Pregent v. Mills,* 51 Wash. 187, 98 Pac. 328; *Colburn v. Washington State Art Ass'n,* 80 Wash. 662, 141 Pac. 1153, L. R. A. 1915A, 594; *Firestone Tire & Rubber Co. v. Pacific Transfer Co.,* 120 Wash. 665, 208 Pac. 55, 26 A. L. R. 217; *McDonald v. Perkins & Co.,* 133 Wash. 622, 234 Pac. 456, 40 A. L. R. 859. See, also, American Annotated Cases, 1913E, 864. As stated in some of these cases, this rule has its foundation in necessity, for the bailee, having the exclusive possession of the property, has, likewise, the exclusive means of knowing what becomes of it, and it is, therefore, no hardship upon the bailee to require him to explain.

There is a corollary to this rule, however, namely, that, when the bailee has shown that such loss resulted from burglary, larceny, fire, or from some other cause which, of itself, does not point to negligence on the part of the bailee, the *prima facie* case against the

bailee has been met, and the burden of proof then rests on the bailor, as in any other case of alleged negligence. *Colburn v. Washington State Art Ass'n,* 80 Wash. 662, 141 Pac. 1153, L. R. A. 1915A, 594; *Firestone Tire & Rubber Co. v. Pacific Transfer Co.,* 120 Wash. 665, 208 Pac. 55, 26 A. L. R. 217; *McDonald v. Perkins & Co.,* 133 Wash. 622, 234 Pac. 456, 40 A. L. R. 859; *Birk v. Bremerton,* 137 Wash. 119, 241 Pac. 678.

Reverting, for the moment, to the statute above quoted, we note that by the proviso therein the liability of the hotelkeeper, as a bailee, is specifically restricted to cases where the loss or destruction of the guest's property is caused by the theft or gross negligence of the hotelkeeper, his agents, servants, or employees. In such cases, the rule of ordinary negligence does not apply.

However, the hotelkeeper's possession of the property and his means of knowing what becomes of it are just as exclusive as are those of any other bailee. Consequently, a like necessity exists for the adoption of a rule requiring a hotelkeeper to show that a proven loss did not result from a cause for which he is liable. Indeed, it is more urgent that such a rule be adopted because in many, if not in most, cases the bailor is a transient guest, and it would be well-nigh impossible for him ever to prove theft by, or gross negligence on the part of, those connected with the hotel. We, therefore, hold, as we have held in former cases, that, when the guest of an hotel proves that he has deposited money or other valuables for safekeeping with the hotel and that they have not been returned to him on demand, he has made a *prima facie* case of liability and the burden is then upon the hotelkeeper to come forward with evidence to show that the loss or destruction, if any, was not caused by the gross negligence of, or theft by, himself or his employees. *Watt*

*v. Kilbury,* 53 Wash. 446, 102 Pac. 403; *Gillett v. Waldorf Hotel Co.,* 136 Wash. 615, 241 Pac. 14. See, also, *Davis v. Cohen,* 253 Mich. 330, 235 N. W. 173.

Examining the evidence in the light of the rules just stated, we are of the opinion that appellant failed to meet the burden of coming forward with evidence to show that the loss was not caused either by the theft of its employees or by the gross negligence of appellant or its employees. On the contrary, there was ample evidence in the case from which it could be found that the money was either stolen by some employee or else that, by reason of the gross negligence of appellant or its employees, some outsider was enabled to steal it. In fact, it is difficult to see how the loss could have occurred otherwise.

Since appellant did not meet the burden thus imposed upon it, the statute cannot be invoked as a complete bar to recovery by respondent.

The next question to be decided is presented by respondent's cross-appeal. ,That question is whether or not the statutory limitation of liability to one thousand dollars is applicable here.

Respondent contends that he is entitled to recover, not merely the limited amount, but the full amount, of his deposit, under the rule that it is the positive duty of a bailee to return the bailor's goods or explain their loss, and the concomitant rule that, in the absence of an explanation or excuse by the bailee of his failure to return such goods, a negligent loss by the bailee will be presumed.

That such rules apply generally to cases of bailment we have already noticed. But the statute above quoted clearly limits the extent of liability when the bailee is the operator of an hotel, lodging house, or inn. The statute specifically states that, when the hotelkeeper provides a safe or vault for the safekeeping of money or

other valuables of small compass, and the guest delivers such property to the person in charge of the office, for deposit in such safe or vault, the hotelkeeper shall not be liable for any loss or destruction thereof exceeding the sum of one thousand dollars, unless a special arrangement in writing be made between the parties. It is conceded in this case that there was no special arrangement concerning the particular deposit.

The statute clearly intended that, upon compliance with its requirements, the liability of the hotelkeeper should be limited to one thousand dollars. In enacting the statute, the purpose of the legislature was to compel the hotelkeeper to provide a safe or vault for the safekeeping of the property of his guests, but at the same time to set a limit upon the amount, in value, of property which the hotelkeeper could be compelled to receive or assume liability for, except by a specific agreement in writing. Beyond that limit, the guest who has been properly notified according to the terms of the statute is forced to assume the risk of loss unless he makes a different arrangement with the hotelkeeper. It is apparent that the statute intended to create mutual and reciprocal duties and rights between the hotelkeeper and his guests and in that way to prescribe and maintain a fair and reasonable balance of protection to both. The reason for such limitation is, we think, practically and legally sound.

In *Millhiser v. Beau Site Co.*, 251 N. Y. 290, 167 N. E. 447, a guest had left with an hotel, for safekeeping, jewelry of the value of $369,800. The clerk who had received the package stole fifty thousand dollars worth of the jewelry. The appellate division held that the statute, which is similar to ours in the matter of limited liability, did not protect the hotelkeeper or limit its obligation in a case where the property was stolen by one of its employees, but only in cases where the

property was stolen by one not an employee of the hotel. On appeal, the judgment was affirmed, specifically on the ground of an insufficient posting of notice. But the court of appeals distinctly rejected the ground upon which the judgment had been rested by the appellate division and said:

"During the many years that a statute has been in existence in this State limiting the liability of a hotel to a guest, no case has been decided by this court indicating that such limited liability did not exist in case ·the property of a guest deposited for safekeeping was stolen from a hotel by an employee thereof. Such a holding by this court would nullify the purpose of the statute and be in conflict with the spirit and intent thereof."

We are in accord with the view expressed by the New York court of appeals.

We have not been able to find a case touching the question whether the limitation of liability applies to losses occasioned by the gross negligence of the hotelkeeper or his employees. Our statute, however, provides that, if the guests deliver property for deposit, the hotelkeeper

" . . . shall not be liable for the loss or destruction thereof, or damage thereto, sustained by such guests . . . exceeding the sum of one thousand dollars, notwithstanding said property may be of greater value, unless by special arrangement in writing with such proprietor, [etc.]."

No distinction is made in the statute between losses caused by gross negligence and those occasioned by less than gross negligence or by any other cause. On the contrary, the statute appears to comprehend, in terms at least, all losses in excess of one thousand dollars.

Reading the statute in its entirety, and remembering that it was intended to afford a reasonable protection

to each of the parties and to impose a division of responsibility between them, we construe its terms to mean that the one thousand dollar limitation applies to losses caused by the theft of an employee or by the gross negligence of the hotelkeeper or his, or its, employees.

However, for obvious reasons, we also construe our statute to mean that the limitation of liability does not apply in case of a theft by the hotelkeeper himself or in case of appropriation by the hotelkeeper, whether individual or corporate. To hold otherwise, would be manifestly absurd and palpably wrong. Theft by an employee is theft from the bailee, and is committed by one acting outside of the scope of his employment, while theft by the hotelkeeper is a theft from the bailor by the bailee himself. *Millhiser v. Beau Site Co.*, 251 N. Y. 290, 167 N. E. 447. Appropriation by the hotelkeeper is subject to equal condemnation. *In re Brainard Hotel Co.*, 75 F. (2d) 481.

We are aware that in the case of *Gillett v. Waldorf Hotel Co.*, 136 Wash. 615, 241 Pac. 14, cited above, it is indicated near the end of the opinion that, where loss is caused by the theft or negligence of the hotelkeeper or his servants, the liability of the hotelkeeper is not limited. To avoid any suggestion of inconsistency or conflict between that decision and our holding in this case, we point to the fact that, since the decision in the *Gillett* case, the innkeeper's statute has been materially amended. The former statute [Rem. Comp. Stat., § 6862] specifically provided that the

". . . hotel-keeper shall be liable for any loss of the above-enumerated articles . . . if caused by the theft or negligence of the hotel-keeper or any of his servants."

The present statute does not contain that provision. Although the statute, as it now reads, is still somewhat

difficult of precise analysis, it is reasonably clear, we think, that it intended that the limitation of liability should apply to losses occasioned by the theft of an employee or by the gross negligence of the hotelkeeper or his, or its, employees.

Turning, again, to the evidence, and assuming, merely for the sake of argument, that the hotel company would be bound by the act of its manager, we find nothing whatever therein from which it could be inferred that the manager himself took the money from the safe or personally ever had it in his possession. On the contrary, the only conclusion that can be drawn from the evidence is that, if, as the jury found, the money was never returned to respondent, it was either stolen by some employee, other than the manager, or by some outsider, or else was lost through the gross negligence of the hotel company, its manager, or employees. Under any of such circumstances, the limitation would apply.

We conclude that appellant is liable to the respondent to the extent of one thousand dollars, but not in excess thereof.

The judgment is affirmed on both appeals. Neither party will recover costs in this court.

SIMPSON, BEALS, MILLARD, and GERAGHTY, JJ., concur.